# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL TROXEL, etc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 21-0057-WS-N |
| | ) |
| GUNITE PROS, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on Plaintiffs' Motion for Conditional Certification, for Approval and Distribution of Notice and for Disclosure of Contact Information (doc. 47). The Motion has been briefed and is now ripe.

**I.     Background.**

This action was brought by eight named plaintiffs, each individually and on behalf of all others similarly situated, against Gunite Pros, LLC, Paul Castillion and Carla Castillion for violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA").[1]  Plaintiffs identify themselves as six former hourly-paid drivers and two former hourly-paid managers who were employed by Gunite Pros, a pool finishing business, during some portion of the 2020-2021 time period. (Doc. 37, PageID.190-91, ¶¶ 34-41.)  Plaintiffs allege that they and other hourly-paid employees of Gunite Pros regularly worked over 40 hours per week, but were not paid an overtime premium for hours worked over 40 in a given workweek. (*Id.*, PageID.191, ¶¶42-49.)  They further allege that the six driver plaintiffs and

---

[1]     More precisely, the action was initially brought by a single named plaintiff, Michael Troxel, as an FLSA collective action. (Doc. 1.)  In the months after the Complaint was filed, seven additional plaintiffs (Anthony Roca, Christopher Sharpe, James Wilkinson, Anthony Baker, Derrick Bradshaw, April Lewis and Adam Cornett) filed Consents to Join Collective Action (docs. 18, 20, 26, 27, 29, 30.)  On September 14, 2021, plaintiffs filed their First Amended and Substituted Complaint – Collective Action (doc. 37) naming all eight plaintiffs and refining their collective action allegations against defendants.

Gunite Pros' other hourly-paid drivers regularly worked over 40 hours in a week, regularly worked hours for which they were not paid, were clocked out by Gunite Pros when they reached Department of Transportation-prescribed driving limits even though they were still driving, and were assigned routes which they could not complete within the mandated DOT limits. (*Id.*, PageID.192, ¶¶ 50-58.) Thus, the driver plaintiffs allege that they and other Gunite Pros drivers performed work that went unrecorded and uncompensated, such that they were not paid a proper overtime rate for hours worked in excess of 40 in a workweek. (*Id.*, PageID.193, ¶¶ 59-61.)

Based on these and other allegations in the First Amended Complaint, plaintiffs propose two collectives under the FLSA, one consisting of all hourly employees who worked over 40 hours in any week within the past three years (the "Hourly Employee Collective"), and the other consisting of all drivers within the past three years (the "Driver Collective"). (*Id.*, PageID.194, ¶ 58.) Plaintiffs allege that members of the Hourly Employee Collective exceed 30 persons and are similarly situated in that they were paid hourly, worked more than 40 hours in at least one week during the three years preceding the filing of the Complaint, and were subject to Gunite Pros' policy of failing to pay overtime premiums for hours worked over 40 in a workweek. (*Id.*, PageID.194-95, ¶¶ 72-73.) Plaintiffs allege that members of the Driver Collective exceed 30 persons and are similarly situated in that they were paid hourly, worked more than 40 hours in at least one week during the three years preceding the filing of the Complaint, were subject to Gunite Pros' policy and practice of clocking drivers out when they reached the DOT limit, and worked hours that went unrecorded and uncompensated. (*Id.*, PageID.195, ¶¶ 75-76.)

Plaintiffs now move for conditional certification of the proposed collectives for notification purposes. They also ask the Court to approve plaintiffs' proposed notice and consent forms, grant leave for plaintiffs to send notice via U.S. mail and electronic mail, and order defendants to provide contact information for collective members. Defendants oppose virtually every aspect of the relief requested by plaintiffs' Motion.

**II.     Analysis.**

    **A.     Request for Conditional Certification.**

Pursuant to Section 216(b) of the FLSA, an action to recover unpaid minimum wage or overtime compensation "may be maintained against any employer … in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves ***and other employees similarly situated***." 29 U.S.C. § 216(b) (emphasis added). The

FLSA includes an opt-in mechanism pursuant to which interested employees who are similarly situated to the named plaintiffs must give their consent in writing in order to become parties plaintiff in the collective action. *See id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Plaintiffs seeking to proceed as an FLSA collective action must obtain judicial certification and permission to issue notice to putative opt-in class members. The ultimate decision whether to issue notice or certify a collective action lies within the sound discretion of the court. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). "Before determining to exercise such power …, the district court should satisfy itself that there are other employees … who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Although plaintiffs bear the burden of proof as to both the interest and similarly situated elements, "this burden … is not heavy." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996). After all, at this stage "the district court's decision to certify a class is based primarily on pleadings and affidavits," such that the court should adopt a "fairly lenient standard." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (citations and internal quotations omitted). Because "this determination is made using a fairly lenient standard, [it] typically results in conditional certification of a representative class." *Hipp*, 252 F.3d at 1218 (citations omitted).

    1. *Whether Other Employees Desire to Opt In.*

As an initial matter, defendants argue that plaintiffs have failed to show that there are other employees who desire to opt-in to this litigation. The Court disagrees and finds that the record reflects a reasonable basis for concluding that other employees may wish to join this action as opt-in plaintiffs. As noted *supra*, plaintiff Troxel was the only named plaintiff at the inception of this action, with all seven additional named plaintiffs having opted in and later been added as named plaintiffs in the intervening months. Moreover, all plaintiffs have submitted declarations setting forth their belief, based on their experience and knowledge regarding the job duties and pay of other Gunite Pros hourly employees, that others would want to join this lawsuit if they were aware of its existence. Given that plaintiffs no longer are employed at Gunite Pros, and given that minimal (if any) discovery appears to have taken place in this case to date, the Court finds that the mostly unpublished case law cited by defendants is inapplicable. Using a

fairly lenient standard, the Court is satisfied that plaintiffs have met their fairly lenient burden of showing that there are likely to be other employees who desire to opt in to these proceedings.

### 2. *Whether Other Employees are Similarly Situated.*

Next, defendants take aim at the "similarly situated" element of the conditional certification test. In determining whether the named plaintiffs and putative opt-in plaintiffs are sufficiently similar for § 216(b) purposes, "[b]inding authorities do not fix the line of demarcation with crystalline clarity, nor could they reasonably formulate a one-size-fits-all approach, given the myriad case-specific factors that may propel the substantial similarity inquiry in a particular action." *Longcrier v. HL-A Co.*, 595 F. Supp.2d 1218, 1233 (S.D. Ala. 2008). In making this inquiry, what is required of plaintiffs is a "modest factual showing" that the named plaintiffs and prospective opt-in plaintiffs "were victims of a common policy or plan that violated the law." *Id.* at 1234 (citation omitted).

As evidence of substantial similarity, plaintiffs submit declarations in support of their Motion. In those declarations pertaining to the proposed Hourly Employee Collective, hourly employees such as plaintiff Michael Troxel indicate that "[o]ther hourly employees worked similar schedules to me and also regularly worked over 40 hours per week. I know this because I observed other hourly employees working schedules similar to mine, [and] because other hourly employees and I discussed the hours we worked." (Doc. 47-7, PageID.299, ¶ 9.) The Troxel Declaration continues that defendants "did not pay [other hourly employees] overtime premiums for any of the hours they worked over 40 each week. I know this because other hourly employees and I discussed the way we were paid." (*Id.*, ¶ 11.) For purposes of the proposed Hourly Employee Collective, defendants object that plaintiffs' evidence consists of general boilerplate allegations whose chief defect is "their failure to provide sufficient evidence regarding Plaintiffs' job duties." (Doc. 50, PageID.359.) This objection is curious for three reasons. First, plaintiffs' uncontroverted allegation at this point is that "[a]ll of Defendants' hourly employees are construction laborers who perform the duties of pool finishing." (Doc. 51, PageID.437.) In other words, the proposed members of the Hourly Employee Collective are all doing the same thing. Second, defendants' characterization of the duties of the "yard/shop workers" who would comprise the Hourly Employee Collective is markedly similar to that set forth in plaintiffs' evidence. (*Compare* doc. 50-1, PageID.385, ¶ 4 *with* doc. 47-7, PageID.299, ¶ 7.) Third, it does not appear that the specific job duties and job titles of members of the Hourly

Employee Collective would be significant to the FLSA analysis in this case.  After all, plaintiffs' evidence is that Gunite Pros' pay policy applied to all of its hourly workers in the Hourly Employee Collective.  That policy, as alleged by plaintiffs, would violate the FLSA regardless of the specific job duties of individual employees; indeed, no exemption has been suggested with respect to the yard/shop workers who would comprise the Hourly Employee Collective, so a duties analysis appears inapplicable.  The point is that plaintiffs' evidence suffices to constitute a "modest factual showing" that the named plaintiffs and prospective opt-in plaintiffs "were the victims of a common policy or plan that violated the law," so as to satisfy their burden of substantial similarity as to the Hourly Employee Collective.

     Next, defendants contend that the requisite substantial similarity is not present here because in determining whether specific employees are eligible for overtime compensation under the FLSA, individualized employee-by-employee, week-by-week analyses must be undertaken. Defendants explain their position as being that plaintiffs were exempt from FLSA overtime by virtue of the MCA Exemption.[2]  They further identify plaintiffs' counterargument as being that the MCA Exemption is inapplicable because of the so-called "small vehicle" exception, which operates in a manner that the MCA Exemption "does not apply to a driver [or driver's helper, loader or mechanic] … in any workweek in which their work affects the safe, interstate operation of motor vehicles weighing 10,000 pounds or less. … Those [employees] are instead covered employees under the FLSA and are therefore entitled to overtime compensation."  *Altare v. Vertical Reality MFG, Inc.*, 2021 WL 1723581, *6 (S.D. Fla. Apr. 30, 2021) (citations and internal quotation marks omitted).  Defendants' point is that the determination of whether Gunite Pros drivers are entitled to FLSA overtime compensation will be have to be made on an employee-by-employee, workweek-by-workweek basis.  According to defendants, the necessity for these individualized determinations negates the suitability of the proposed collectives for conditional certification in this case.

---

     [2]    "The FLSA exempts from the overtime pay requirement 'any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49,' otherwise known as the Motor Carrier Act ('MCA') exemption.  29 U.S.C. § 213(b)(1)."  *Abel v. Southern Shuttle Services, Inc.*, 631 F.3d 1210, 1212 (11th Cir. 2011).

The trouble with defendants' "individualized inquiry" argument is that each named plaintiff has attested that he or she "regularly loaded, fueled, drove or otherwise worked with vehicles which were under 10,000 pounds, such as pickup trucks," and that other hourly employees did the same. (Doc. 47-7, PageID.299, ¶ 7; doc. 47-8, PageID.302, ¶ 8; doc. 47-9. PageID.306, ¶ 8; doc. 47-10, PageID.310, ¶ 8; doc. 47-11, PageID. 314; ¶ 8; doc. 47-12, PageID.318, ¶ 8; doc. 47-13, PageID.322, ¶ 8; doc. 47-14, PageID.326, ¶ 8.) This showing is sufficient to raise a reasonable inference that (a) named plaintiffs were covered by the small vehicle exception to the MCA Exemption, and (b) prospective opt-in plaintiffs were as well. To be sure, there may be particular workweeks where plaintiffs (named or opt-in) did not perform work that affected the safe, interstate operation of small vehicles, such that they would lose the benefit of the small-vehicle exception and be exempt from overtime compensation pursuant to the MCA Exemption for those particular workweeks. But that is a question of damages. Individualized calculations of damages are common and, in fact, inevitable in FLSA collective actions, and do not automatically strip an action of suitability for collective action status. To find otherwise would be to declare that conditional certification is <u>never</u> appropriate in FLSA collective actions where the small-vehicle exception to the MCA Exemption is in play. Defendants cite no authority for such a sweeping proposition, and this Court is aware of none. Of course, if discovery later reveals that a substantial number of opt-in plaintiffs did not regularly perform work that affected the safe, interstate operation of small vehicles, that revelation could form a potential basis for decertification or dismissal of those particular opt-in plaintiffs. But that is not an appropriate basis for denying conditional certification at this stage, given the nature of plaintiffs' evidence and the fairly lenient standard by which that evidence is evaluated for conditional certification purposes.

Finally, defendants urge the Court not to conditionally certify the Driver Collective because, aside from reasons already described *supra*, (i) "there is no concrete allegation or any evidence that the alleged off-the-clock work by the drivers was the result of a common plan or policy," (ii) defendants have presented contrary evidence that Gunite Pros does not have a policy of clocking drivers out when they reach 11 hours, and (iii) plaintiffs have failed to present "substantial and detailed allegations of supposed off-the-clock work." (Doc. 50, PageID.370-72.) The Court finds none of these arguments persuasive at the conditional certification stage. As to the first point, the driver plaintiffs' declarations unequivocally reflect that Gunite Pros

clocked them out before they finished driving a route when they hit the prescribed 11-hour drive time limit, and that Gunite Pros did the same to other drivers, as well. (*See, e.g.*, doc. 47-13, PageID.324, ¶¶ 19-20.) That showing is sufficient to raise an inference of a common plan or policy that satisfies plaintiffs' modest burden at the conditional certification stage. As to the second contention, defendants' showing may well create a factual dispute as to whether Gunite Pros did or did not have a policy or practice of clocking drivers out when they reached the 11-hour drive time limit. Such "factual disputes may properly be addressed after discovery at the second stage of the FLSA collective action process …, but they do not constitute a valid basis for denying conditional class certification today." *Longcrier*, 595 F. Supp.2d at 1238. With respect to the third argument, the Court finds plaintiffs' showing to be sufficiently substantial and detailed to satisfy the fairly lenient standard for conditional certification, even without "examples of any specific occasion when a Plaintiff was clocked out before the completion of a route." (Doc. 50, PageID.372.) Of course, defendants are free to develop these issues during discovery and, if appropriate, to file a motion for decertification based on the evidence that process may reveal. But the high degree of specificity that defendants demand at the initial, conditional certification stage is out of step with the low bar erected by binding precedents.

### 3. *Whether the Proposed Collectives are Overbroad.*

As a distinct category of objections, defendants maintain that conditional certification should be denied because plaintiffs' proposed classes are "vastly overbroad" in multiple respects. First, defendants balk at how plaintiffs have framed the three-year lookback period. In particular, plaintiffs propose that notice be sent to an Hourly Employee Collective consisting of "all hourly employees employed by Gunite Pros … since February 3, 2018" (three years prior to the date on which the original Complaint was filed), and to a Driver Collective consisting of "all hourly-paid Drivers employed by Gunite Pros … since September 14, 2018" (three years prior to the date on which the Amended Complaint was filed). (Doc. 47-1, PageID.282.) Defendants correctly point out that the requisite three-year period for any opt-in plaintiff commences not from the date the pleading is filed, but from the date the opt-in plaintiff files a consent to join. *See Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1016 (11th Cir. 2007) (FLSA "plainly states that [a collective] action may not proceed as to any person until a formal written consent from that person is filed in court"); *Grayson*, 79 F.3d at 1106 ("only a written consent to opt-in will toll the statute of limitations on an opt-in plaintiff's cause of action"). In light of this principle, the

Court agrees that the three-year lookback in the notice period should not be calculated by reference to the filing of the Complaint or Amended Complaint, because of the obvious overbreadth problem that would be created by including employees who were working for Gunite Pros three years prior to the filing of the Complaint / Amended Complaint but whose employment terminated more than three years prior to any possible opt-in in this action. To mitigate this overbreadth problem, the Court determines that the three-year lookback period for purposes of the notice will be keyed from the date of entry of this Order, rather than the date of filing of the Complaint / Amended Complaint.

Second, defendants assert that the proposed Hourly Employee Collective is overbroad because "it is not limited to employees with the same job classifications that Plaintiffs are alleged to have held during their employment." (Doc. 50, PageID.374-75.) This argument is essentially a repackaging of one of defendants' "similarly situated" objections discussed *supra*. The analysis and result are the same here. All indications before the Court at this time are that Gunite Pros has a singular line of business (namely, finishing swimming pools), that all of its hourly employees are construction laborers who perform duties in furtherance of that line of business, and that all such hourly employees are subject to the same Gunite Pros policy of not receiving premium pay for hours worked in excess of 40 in a workweek. Under the particular circumstances presented here and given the information presently before it, the Court finds that the proposed Hourly Employee Collective is not rendered overbroad for including employees of differing job classifications.

Third, defendants maintain that the proposed Driver Collective is overbroad because plaintiffs have not limited their notice to drivers who worked more than 40 hours per week. Of course, defendants are correct that Gunite Pros drivers who failed to work more than 40 hours in a single work week during the relevant lookback period would not be eligible to recover for the alleged FLSA violation, which involved requiring drivers to work off the clock and thereby depriving them of overtime compensation. In other words, a driver who was forced to work off the clock under Gunite Pros policy would not have been deprived of FLSA overtime as a result of that policy unless the employee actually worked in excess of 40 hours in that work week. But plaintiffs' evidence is that not only the named plaintiff drivers, but also other drivers at Gunite Pros, regularly worked more than 40 hours per week and were regularly clocked out by defendants before they finished driving a route. (*See, e.g.*, doc. 47-8, PageID.303-04, ¶¶ 18-19.)

That evidence is sufficient at the conditional certification stage to justify sending notice to all drivers, not just those who worked more than 40 hours in one or more work weeks.[3]

### B. Form and Manner of Notice.

"Concurrently with granting conditional class certification, a district court also has the discretion to implement § 216(b) by facilitating notice to potential class members." *Longcrier*, 595 F. Supp.2d at 1242 (citations and internal quotation marks omitted). Thus, "[i]f the plaintiff makes the requisite modest factual showing, the Court may allow notice of the case to be sent to the similarly situated employees, who then have the opportunity to opt in as plaintiffs." *Id.* (citation omitted). The Court will allow notice of this action to be transmitted to similarly situated Gunite Pros employees, who will be afforded an opportunity to opt in to this action as additional plaintiffs.

As exhibits to their Motion for Conditional Certification, plaintiffs attach a proposed Notice of Right to Join Lawsuit (doc. 47-1), a proposed Consent to Join Collective Action form for both Hourly Employee and Driver Collectives (doc. 47-2), a proposed Text of Electronic Transmissions (doc. 47-3), and a proposed Second Notice of Right to Join Lawsuit (doc. 47-5). Defendants have interposed myriad objections to plaintiffs' proposed notice forms and procedures. First, defendants posit that a three-year statute of limitations is inappropriate because plaintiffs have "failed to justify" same, and that a two-year limitations period should apply instead. (Doc. 50, PageID.376.) Of course, whether the applicable FLSA limitations period is two years or three years depends on whether the alleged violations are deemed willful, in which case the lengthier period would apply. Any conclusive determination of willfulness is premature at this time, given the lack of discovery. The Court cannot foreclose the reasonable

---

[3] An obvious logistical issue with defendants' alternate means of defining which drivers would receive notice is that plaintiffs' allegations concern off-the-clock work. If this Court were to order that notice be sent only to those drivers who worked more than 40 hours in one or more weeks, how could such individuals be identified? Surely not from Gunite Pros' payroll records, because plaintiffs allege that drivers were being forced to work off the clock. So defendants' timeclock records would not accurately capture those drivers who worked more than 40 hours in a week because those records would omit the off-the-clock work that is the very subject of plaintiffs' FLSA claim. The more prudent (not to mention logistically feasible) course of action at this stage is to send notice to all drivers. If discovery reveals that any drivers never worked in excess of 40 hours (on or off the clock) during the relevant lookback period, then those identified individuals may be dealt with appropriately via subsequent motion practice after the close of discovery.

possibility that the alleged FLSA violations in this case may ultimately be found to be willful; therefore, the Court declines defendants' invitation to make a definitive pronouncement on willfulness at this time in the context of determining the proper notice of opt-in rights. Thus, the Court will allow notices to be issued for all Hourly Employees and Drivers employed by Gunite Pros at any time during the three year-period preceding the date of entry of this Order.

Second, defendants' objection to the duration of the proposed opt-in period is overruled. Plaintiffs' proposal of a 90-day opt-in period is fair and reasonable. Defendants have made no showing why their alternative proposal of a 60-day opt-in period might be more fair and just, in light of the broad remedial purposes of the FLSA. Third, defendants protest that plaintiffs' proposal that a reminder notice be sent 30 days after the original notice "could be interpreted by potential class members as encouragement by the Court to join the lawsuit." (Doc. 50, PageID.378.) Where the language in the proposed reminder notice makes clear that it is the individual's choice whether or not to take any action, the Court finds any risk that the reminder might be viewed as judicial endorsement or tacit encouragement to join the lawsuit is so attenuated as to be negligible. Therefore, the Court will allow issuance of reminder notice 30 days after issuance of the original notice.

Fourth, defendants take issue with much of the content of the form of notice, offering alternative language and suggestions on a nearly line-by-line basis. The Court is confident that the parties, working together in good faith, should and can resolve these minor objections and develop a mutually agreeable form of notice. Accordingly, the parties are **ordered**, on or before **January 18, 2022**, to submit a mutually agreeable form of notice of opt-in rights (and accompanying consent forms and follow-up notice) for the undersigned's approval. To the extent the parties are unable to agree, they must file separate proposals on or before the January 18 deadline, explaining the specific differences in their proposals, the good-faith reasons for their inability to reach agreement, and the legal basis for their respective positions.

**III.   Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiffs' Motion for Conditional Certification, for Approval and Distribution of Notice and for Disclosure of Contact Information (doc. 47) is **granted**;
2. This case is **conditionally certified** as an FLSA Collective Action, including both an Hourly Employees Collective and a Driver Collective and consisting of current and

former employees whom Gunite Pros employed at any time between January 4, 2018 and January 4, 2022;

3. To facilitate the provision of notice, defendants are **ordered**, on or before **January 18, 2022**, to produce to plaintiffs' counsel in a mutually agreeable format a list containing the names, last known addresses, and last known email addresses of all Collective Members;

4. The parties are **ordered**, on or before **January 18, 2022**, to submit a mutually agreeable form of notice of opt-in rights (along with consent forms and follow-up notice) for the undersigned's approval;

5. Within seven (7) calendar days after the Court approves the notice of opt-in rights, plaintiffs' counsel must transmit the approved Notice and Consent Form to all Collective Members by U.S. Mail and electronic mail;

6. Thirty (30) days after transmission of the Notice and Consent Form, plaintiffs' counsel may send follow-up notice by email or postcard to Collective Members who have not responded to the original notice;

7. No other mass mailings, notices or transmissions to prospective opt-in plaintiffs are authorized by this Order; and

8. All consents must be received and filed by no later than 90 days after the original transmission of the Notice and Consent Form to Collective Members.

DONE and ORDERED this 4th day of January, 2022.

s/WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE