IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL TROXEL, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 21-0057-WS-N |
| | ) |
| GUNITE PROS, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This FLSA matter is before the Court on the parties' joint motion for approval of collective action settlement. (Doc. 119). The parties have submitted a brief, (Doc. 120), and their settlement agreement, (Doc. 119-1), in support of their motion. After careful consideration of these materials and of other relevant materials in the file, the Court concludes that more briefing is required.

The amended complaint was filed by eight named plaintiffs. (Doc. 37). It alleged three violations of the FLSA: (1) failure to pay hourly employees an overtime rate for hours over forty worked in a given workweek; (2) failure to pay a subset of hourly employees – drivers – at all for certain hours worked; and (3) failure to pay the lead plaintiff at all for his final two weeks of work.

In January 2022, the Court conditionally certified a collective action including both an hourly employee collective and a driver collective, with inclusive employment dates of January 4, 2019 through January 4, 2022. (Doc. 56 at 10-11; Doc. 58). The Court further approved the content and form of notice, consent forms, and follow-up notice, as well as the timing of various steps in the notice and opt-in process. (Doc. 56 at 9-10; Doc. 60). In August 2022, the parties notified the Court they had reached a settlement in principle. (Doc. 112). The instant motion, filed on October 11, 2022, followed.

"There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees": under the supervision of the Secretary of Labor or by "the district court … enter[ing] a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982);

*accord Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307-08 (11th Cir. 2013) (under *Lynn's*, which "applies to settlements between former employees and employers" as well as current employees, an FLSA settlement not made under the supervision of the Secretary of Labor "is valid only if the district court entered a 'stipulated judgment' approving it").

The settlement agreement calls for a total payment of $185,000, which includes attorney's fees and costs. (Doc. 119-1 at 2). Of this amount, $105,000 will go to the plaintiffs and $80,000 to counsel. (*Id*. at 2-3). Of the plaintiffs' share, $13,225 represents service awards to the eight named plaintiffs, in amounts ranging from $225 to $6,300. (*Id*. at 11). Of the plaintiffs' remaining $91,775 share, individual awards range from $0.94 to $14,273.58. (*Id*.). For tax purposes, half of these awards will be deemed to be wages subject to withholding, and the other half will be deemed to be liquidated damages. (*Id*. at 2-3). In exchange, the named plaintiffs will provide global releases and the opt-in plaintiffs more limited releases. (*Id*. at 4-5). The Court concludes it has been provided insufficient information with which to determine whether the settlement is fair and reasonable under governing standards.

First, and as noted, the settlement agreement provides for attorney's fees and costs of $80,000. The parties state that they "fully resolved the claims of Plaintiffs before first discussing attorney's fees and court costs." (Doc. 120 at 4). The parties later state that only "$60,000 of this [$80,000] amount was separately negotiated … after the Parties reached a settlement as to liability damages." (*Id*. at 9). Beyond this agreed figure, "Plaintiffs' counsel requests an additional $20,000.00 from the gross settlement fund in recognition of the considerable fees and expenses incurred" and "[c]onsistent with their contingency agreement with Plaintiffs." (*Id*.). The defendants "have no objection to the revised breakdown of the $185,000.00 to provide an additional portion of the total settlement to be attributed to Plaintiffs' attorneys' fees." (*Id*.).

It seems clear from these statements that the parties first agreed to a fund of $125,000 to resolve the plaintiffs' claims. They then separately negotiated a $60,000 fee and costs award, for a total pot of $185,000. Now, plaintiffs' counsel seek to claw back from their clients $20,000 that the parties have already agreed will be paid to the plaintiffs. Plaintiffs' counsel justify this grab as providing them an award more in line with their contingency fee agreement and within the lodestar amount. (Doc. 120 at 9-10). They have not, however, offered any argument or authority for the proposition that they may divert to themselves funds already agreed to be paid to their clients.

Second, the parties' briefing makes it difficult to assess the reasonableness of the settlement amount. The settlement agreement "provides for no recovery to the claims asserted under the Driver Collective" but provides for approximately 85% recovery of the plaintiffs' three-year "estimated best-case scenario lost wage damages" under the overtime claim. (Doc. 120 at 5-6). The parties do not identify either the total unpaid overtime (the denominator) or the amount being paid to satisfy the overtime claim (the numerator),[1] so it is impossible to verify their 85% figure.[2] Nor do the parties confirm that each plaintiff is receiving the same percentage of his or her unpaid overtime.[3] The parties suggest that the use of a three-year period, back to January 2019, generously enhances the plaintiffs' recovery, but the Court is skeptical, given that seven of eight named plaintiffs were not employed before April 2020 – well within the minimum two-year period. (Doc. 37 at 5-6). Finally, the parties have offered no reason the plaintiffs should not receive 100% of their unpaid overtime compensation, especially since they identify no weakness in the proof or defense to liability, and since "[m]any" of the plaintiffs are members of the driver collective,[4] which is forfeiting any recovery at all on that claim.

Third, the parties have not supported the provision of $13,225 in service awards. Most importantly, the lead plaintiff is to receive a service award of $6,300, a figure that is unprecedented in the Court's experience. The parties say that this award "takes into account" this plaintiff's claim for failure to pay him for his final two weeks of work, but the parties offer

---

[1] The correct numerator would appear to be either $91,775 or $111,775 (depending on the fate of the $20,000 addressed in text) but, for all the Court can tell, the parties may have used $125,000 or some other figure as the numerator.

[2] The parties note that the Court has approved an FLSA settlement of 25% of potential recovery. (Doc. 120 at 6). This was 25% of potential recovery, including liquidated damages, or 50% of actual lost wages. The 85% figure the parties trumpet is of actual wages only, with nothing for liquidated damages. Moreover, the 85% figure is for one claim only, with recovery under the other claim being 0%, which reduces the overall percentage recovery to an undisclosed degree.

[3] As noted, the range of awards stretches from over $14,000 to under $1.

[4] Six out of eight named plaintiffs are members of the driver collective. (Doc. 37 at 5-6).

no authority for the proposition that a service award may properly be awarded as a substitute for owed compensation.[5]

Fourth, the Court has declined to approve settlements requiring releases that extend beyond FLSA claims, absent confirmation that the plaintiffs and opt-in plaintiffs have made "an informed decision assisted by advice of counsel." *Mygrant v. Gulf Coast Restaurant Group, Inc.*, 2019 WL 4620367 at *4-5 (S.D. Ala. 2019). The parties have not demonstrated their compliance with this requirement.

Fifth, the settlement agreement calls for the defendants to deliver to plaintiffs' counsel the checks payable to each plaintiff and, at the same time, a check representing the attorney's fees and costs awarded to plaintiffs' counsel. (Doc. 119-1 at 2-3). The Court requires that the latter payment be split between two checks, one of which will be in the amount of $5,000, to be held by plaintiffs' counsel until after distribution to the plaintiffs of all settlement amounts and final disposition of this action.[6]

The parties are **ordered** to file, on or before **November 7, 2022**, such supplemental materials as they deem sufficient and appropriate to address the issues and resolve the deficiencies identified above, failing which their motion for approval of collective action settlement will be denied, without prejudice and without further notice.

DONE and ORDERED this 24th day of October, 2022.

        s/WILLIAM H. STEELE
        UNITED STATES DISTRICT JUDGE

---

[5] The lead plaintiff may certainly compromise his individual claim for unpaid compensation, but any such compromise must be separately disclosed to the Court as such and shown to be fair and reasonable under *Lynn's Foods*. Any such payment presumably will be subject to the usual wage withholding requirements.

[6] The settlement agreement contemplates dismissal pursuant to stipulation. (Doc. 119-1 at 5). Pursuant to *Lynn's Foods*, dismissal must be by stipulated judgment.