IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHAEL TROXEL, et al.,          )
                                 )
    Plaintiffs,                  )
                                 )
v.                               )   CIVIL ACTION 21-0057-WS-N
                                 )
GUNITE PROS, LLC, et al.,        )
                                 )
    Defendants.                  )

**ORDER**

This FLSA matter is before the Court on the parties' joint motion for approval of collective action settlement. (Doc. 119). The parties initially submitted a brief, (Doc. 120), and their settlement agreement, (Doc. 119-1), in support of their motion. The Court on its initial review determined that additional briefing was necessary before resolving the motion. (Doc. 121). The parties have now supplied that briefing. (Doc. 124). The Court addresses in sequence the issues it raised in its previous order.

**A. Attorney's Fees.**

The settlement agreement calls for a total payment of $185,000, which includes attorney's fees and costs. (Doc. 119-1 at 2). Of this amount, $105,000 will go to the plaintiffs and $80,000 to counsel. (*Id*. at 2-3). The parties state that they "fully resolved the claims of Plaintiffs before first discussing attorney's fees and court costs." (Doc. 120 at 4). The parties later state that only "$60,000 of this [$80,000] amount was separately negotiated … after the Parties reached a settlement as to liability damages." (*Id*. at 9). Beyond this agreed figure, "Plaintiffs' counsel requests an additional $20,000.00 from the gross settlement fund in recognition of the considerable fees and expenses incurred" and "[c]onsistent with their contingency agreement with Plaintiffs." (*Id*.). The defendants "have no objection to the revised breakdown of the $185,000.00 to provide an additional portion of the total settlement to be attributed to Plaintiffs' attorneys' fees." (*Id*.). The Court questioned counsel's authority to claw back from their clients $20,000 that the parties have already agreed will be paid to the plaintiffs. (Doc. 121 at 2).

Plaintiffs' counsel respond that the Supreme Court has provided any necessary authority for their action. (Doc. 124 at 3-4). In *Venegas v. Mitchell*, 495 U.S. 82 (1990), the Court ruled that an award of statutory attorney's fees under 42 U.S.C. § 1988 "does not interfere with the enforceability of a contingent-fee contract" obligating the plaintiff to pay counsel more than the awarded fee, leaving a civil rights lawyer free to collect from her client the contractually agreed percentage of the recovery to the extent that amount exceeds the statutorily awarded fee. *Id*. at 90.

Attorney's fees under the FLSA, however, are not governed by Section 1988 but by the FLSA. Plaintiffs' counsel identify no case extending *Venegas* to the FLSA context, and cases discovered by the Court have repeatedly declined to do so. The *Venegas* Court supported its ruling with the observation that, since "§ 1983 plaintiffs may waive their causes of action entirely, there is little reason to believe that they may not assign part of their recovery to an attorney …." 495 U.S. at 88. The cases refusing to apply *Venegas* in the FLSA context note that FLSA plaintiffs, unlike plaintiffs subject to Section 1988 and other fee-shifting statutes, generally may not waive their causes of action; moreover, they are uniquely protected by judicial review of settlements for reasonableness and fairness to the plaintiffs and by a general solicitude for their rights to full recovery.[1] The Court agrees with this assessment and thus concludes that *Venegas* has no application in the FLSA context. This conclusion leaves intact what the Court wrote earlier this year in an FLSA case brought by the same counsel as in this case: "More importantly, the Eleventh Circuit has construed the FLSA to preclude courts, when reviewing settlement agreements, from approving fee awards based on nothing more than the existence of a contingency fee agreement …." *Autrey v. Harrigan Lumber Co*., 2021 WL 6335337 at *2-3 (S.D. Ala. 2021) (citing *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009)).

Plaintiffs' counsel next argue that, even if the Court will not approve an $80,000 fee award based on the provisions of their contingency fee agreement, it should approve the award based on a lodestar analysis. (Doc. 124 at 4-5). Counsel ignore the Court's instruction to explain how "they may divert to themselves funds already agreed to be paid to their clients."

---

[1] *Kerzich v. County of Tuolumne*, 335 F. Supp. 3d 1179, 1189 (E.D. Cal. 2018); *Zegers v. Countrywide Mortgage Ventures, LLC*, 569 F. Supp. 2d 1259, 1263 (M.D. Fla. 2008); *Lazaro v. Liberty Car Service, Inc*., 2021 WL 5508071 at *4 (E.D.N.Y. 2021); *Tapia v. Lira*, 2021 WL 5086300 at *3 (S.D.N.Y. 2021).

(Doc. 121 at 2). As noted, the parties state that, without any discussion of attorney's fees, they "reached a settlement as to liability damages" in the amount of $125,000, then reached a second and separate agreement for payment of $60,000 in attorney's fees. (Doc. 120 at 9). It is clear from this language that the parties agreed the full $125,000 was going to the plaintiffs as compensation, not as a conduit to their counsel. This is consistent with the language of the FLSA, which establishes when an employer is "liable" for unpaid minimum wages, overtime, and liquidated damages, which further provides for an action "to recover the liability prescribed" above, and which further provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The phrase "liability damages" thus encompasses only the compensation and liquidated damages due the plaintiffs, to the exclusion of attorney's fees.

Counsel offer no reason they should be permitted to renege on the agreement they negotiated, under which the plaintiffs will receive $125,000 as compensation for unpaid overtime, and the Court can conceive of none. Nor have counsel explained how, after reaching separate agreement with the defendants as to attorney's fees, they could argue that the fees they agreed to accept are not reasonable under Section 216(b) and thus subject to supplementation.

Even if counsel were legally capable of seeking additional fees under these circumstances, the lodestar analysis they champion demonstrates emphatically that they are not entitled to any fees beyond the $60,000 the defendants have agreed to pay them. Counsel's facile presentation to the contrary amounts to this: because their total attorney's fees incurred in this action are $107,192.50 (plus costs of $1,237.12), an award of $80,000 represents barely 74% of the lodestar amount and thus is necessarily reasonable. (Doc. 124 at 5).

"The starting point in determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. …. The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal quotes omitted). Plaintiffs' counsel assume both that every hour spent was reasonably expended and that their proposed hourly rates are reasonable. The Court disagrees with both assumptions.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation."

*Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988). "The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (internal quotes omitted). "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id*. Plaintiffs' counsel say the proposed rates are supported by national surveys and by awards throughout the Eleventh Circuit as well as in Texas and Arkansas. (Doc. 41-2 at 5-6). However, as plaintiffs' counsel do not assert an absence of qualified local attorneys, local rates control.

Lead attorney Josh Sanford requests an hourly rate of $470. (Doc. 119-4 at 6). The highest hourly rate the Court has approved in an FLSA case is $300, and there were special circumstances presented in that case that are absent here. *Smith v. Werner Enterprises, Inc.*, 2015 WL 7185503 at *4 (S.D. Ala. 2015). The Court is aware, however, that another judge in this District has recently awarded $350 to an FLSA attorney with 25 years experience. *Nail v. Shipp*, 2020 WL 1670459 at *3 (S.D. Ala. 2020). The Court is not entirely persuaded by the *Nail* Court's rationale but, because Mr. Sanford is similarly accomplished, the Court assumes, for present purposes only, that an hourly rate of $350 is reasonable as to him.

Ten other lawyers also billed on this file, and counsel propose hourly rates for them ranging from $220 to $400. (Doc. 119-4 at 6). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates," and "[s]atisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299. Counsel have presented an affidavit purporting to justify the proposed rates (focusing primarily on tangential matters such as the lawyers' accomplishments in law school and in non-FLSA contexts), (Doc. 119-4 at 7-9), but the information provided does not establish the proposed rates as reasonable in the Southern District of Alabama. The Court is also aware that sister courts in Arkansas, in which plaintiffs' counsel "predominantly practice," (*id*. at 1), routinely slash counsel's proposed FLSA hourly rates.[2] The Court is further aware

---

[2] In 2022 alone, examples would include: *Folta v. Norfolk Brewing Co.*, 2022 WL 16984515 at *2 (W.D. Ark. 2022); *Francis v. Gamdan Services LLC*, 2022 WL 2990705 at *2 (E.D. Ark. 2022); *Gutierrez v. 1873 Club*, 2022 WL 2911691 at *2, *8 (W.D. Ark. 2022); *Hale v. Belmont Management Co.*, 2022 WL 2833983 at *2 (W.D. Ark. 2022); *Wolfe v. Affordable* (Continued)

that the rates proposed in this case are all 10% to 47% higher than the rates counsel proposed in other FLSA cases in 2022, lending weight to the voiced suspicion of sister courts that "the rates appear to be entirely arbitrary and unreliable."[3]  Finally, the Court is aware of the hourly rates it approved earlier this year in *Autrey*.  After consideration of all these matters, the Court utilizes the following hourly rates for purposes of evaluating counsel's lodestar argument.[4]

| Lawyer | Proposed rate | Most recent proposed/adopted rate | Adopted rate |
| --- | --- | --- | --- |
| Anna Stiritz | $400 | $300/$250[5] | $150[6] |
| Courtney Lowery | $220 | $190/150[7] | $150[8] |
| Daniel Ford | $220 | $200/$200[9] | $150[10] |

---

*Rooter Service, LLC*, 2022 WL 2352364 at *2 (E.D. Ark. 2022); *Wells v. Seven Star Hotels Group Inc.*, 2022 WL 944369 at *1-2 (E.D. Ark. 2022); and *Ewing v. Pizza Czar, Inc.*, 2022 WL 614932 at *6-7 (E.D. Ark. 2022).

[3] *Huffman v. Associated Management Ltd.*, 2021 WL 3122338 at *2 (E.D. Ark. 2021), *aff'd*, 2022 WL 1114631 (8th Cir. 2022); *see also Hill-Smith v. Silver Dollar Cabaret, Inc.*, 2020 WL 4741917 at *4 n.5 (W.D. Ark. 2020) (internal inconsistencies in rates "only ad[d] to the feeling that the requested rates are somewhat arbitrary and that the firm views the rates in its petition as a starting point in a negotiation with the court").

[4] The Court does not find that these rates do not exceed a reasonable rate but merely assumes for present purposes that they do not.

[5] *Wolfe*, *supra*, at *2; *Ewing*, *supra*, at *6-7.

[6] Ms. Stiritz graduated from law school in 1991, formerly practiced family law, and has for some unstated period of time devoted an unstated portion of her practice to FLSA matters. (Doc. 119-4 at 7).

[7] *Folta*, *supra*, at *2; *Gutierrez*, *supra*, at *2, *8.

[8] Ms. Lowery (who has recently left the Sanford Law Firm, (Doc. 87)), has focused on FLSA matters for the three years she has practiced law.  (Doc. 119-4 at 7).

[9] *Folta*, *supra*, at *2.

[10] Since graduating from law school in 2014, Mr. Ford has, for some unstated period of time, devoted an unstated portion of his practice to FLSA matters.  (Doc. 119-4 at 7).

| | | | |
|---|---|---|---|
| Krista Sheets | $325 | $285/$150[11] | $150[12] |
| Rebecca Matlock | $275 | $250/$125[13] | $150[14] |
| Samuel Brown | $220 | $150/$150[15] | $150[16] |
| Sean Short | $255 | $200/$150[17] | $150[18] |
| Stacy Gibson | $290 | $250/$175[19] | $150[20] |
| Steve Rauls | $350 | $285/$200[21] | $200[22] |

---

[11] *Gutierrez*, *supra*, at *2, *8.

[12] Since graduating from law school at some unstated point in time, Ms. Sheets has worked in the Washington Attorney General's office and has practiced insurance defense, with no mention of FLSA experience. (Doc. 119-4 at 7-8).

[13] *Folta*, *supra*, at *2.

[14] Ms. Matlock graduated from law school in 2015 and has, for the past three years, devoted an unstated portion of her practice to FLSA matters. (Doc. 119-4 at 8).

[15] *Gutierrez*, *supra*, at *2, *8.

[16] Since graduating from law at some unstated point in time, Mr. Brown has for some unstated period of time devoted an unstated portion of his practice to FLSA matters. (Doc. 119-4 at 8).

[17] *Smiley v. Little Rock Donuts, LLC*, 2021 WL 4302219 at *2 (E.D. Ark. 2021).

[18] Mr. Short graduated from law school in 2013, and his practice focuses primarily on general civil litigation, family law and probate, and employment law, with no mention of FLSA experience. (Doc. 119-4 at 8).

[19] *Ewing*, *supra*, at *6-7.

[20] Ms. Gibson graduated from law school in 2014 and, after focusing her practice on family law, probate, and general civil matters, has for some unstated period of time focused on FLSA matters. (Doc. 119-4 at 8).

[21] *Folta*, *supra*, at *2.

[22] Mr. Rauls graduated from law school in 2011 and has approximately ten years experience with FLSA matters. (Doc. 119-4 at 8-9).

| | | | |
|---|---|---|---|
| Vanessa Kinney | $360 | $300/$200[23] | $200[24] |

Counsel propose that paralegal time be compensated at the rate of $145 per hour. (Doc. 119-4 at 6). "Absent a showing that a paralegal possesses some extraordinary qualification or expertise, the lodestar hourly rate of $75 is routinely awarded in this district." *Nicholson v. RB2, LLC*, 2021 WL 895602 at *6 (S.D. Ala. 2021); *accord Stevens v. Mobile County Board of School Commissioners*, 2020 WL 1921557 at *6 (S.D. Ala. 2020). As counsel identify no special attributes of the unnamed paralegals at issue, the routine rate will be employed.

Counsel propose that law clerk time be compensated at the rate of $110 per hour. (Doc. 119-4 at 6). In this District, law clerk time is compensated at the paralegal rate. *Ford v. Navika Capital Group, LLC*, 2017 WL 1381668 at *7 (S.D. Ala. 2017). As counsel identify no special attributes of the unnamed law clerks at issue, the $75 rate will be employed.

Finally, counsel propose that staff time be compensated at the rate of $90 per hour. (Doc. 119-4 at 6). "Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989). As counsel have not demonstrated that the activities billed by "staff" constitute compensable paralegal tasks as opposed to non-compensable overhead, this time will not support any award of attorney's fees.

Applying the appropriate hourly rates to the hours claimed, counsel's fee request shrinks dramatically:

| Biller | Rate approved | Hours claimed | Total |
|---|---|---|---|
| Josh Sanford | $350 | 42.7 | $14,945 |
| Anna Stiritz | $150 | 2.0 | 300 |
| Courtney Lowery | $150 | 71.4 | 10,710 |
| Daniel Ford | $150 | 1.4 | 210 |
| Krista Sheets | $150 | 82.4 | 12,360 |
| Rebecca Matlock | $150 | 14.6 | 2,190 |
| Samuel Brown | $150 | 2.6 | 390 |

---

[23] *Folta, supra*, at *2.

[24] Ms. Kinney graduated from law school in 2007 and has twelve years experience with FLSA matters. (Doc. 119-4 at 9).

| | | | |
|---|---|---|---|
| Sean Short | $150 | 2.5 | 375 |
| Stacy Gibson | $150 | 2.9 | 435 |
| Steve Rauls | $200 | 7.8 | 1,560 |
| Vanessa Kinney | $200 | 13.1 | 2,620 |
| Paralegals | $75 | 166.0 | 12,450 |
| Law clerks | $75 | 12.9 | 967.50 |
| Staff | $0 | 50.3 | -0- |
| | Total: | | $59,512.50 |

So much for reasonable hourly rates. With respect to hours reasonably expended, the Eighth Circuit has recently described counsel's practice as follows:

> The Fair Labor Standards Act (FLSA) requires courts to "allow a reasonable attorney's fee to be paid by the defendant" for successful claims. 29 U.S.C. § 216(b). The Sanford Law Firm (SLF), an employment law firm in Little Rock, has routinely abused this provision. As one district court in Arkansas has noted, SLF has a history of "over-staffing cases, micro-managing associates, billing attorneys' rates for administrative tasks, and failing to self-audit records that are submitted to the court for reimbursement." *Hill-Smith v. Silver Dollar Cabaret, Inc.*, …, 2020 WL 4741917, at *2 (W.D. Ark. 2020). Essentially, SLF takes low-stakes FLSA cases, overstaffs them, and asks defendants to pay for its inefficiencies.

*Oden v. Shane Smith Enterprises, Inc.*, 27 F.4th 631, 632 (8th Cir. 2022).

"Fee applicants must exercise what the Supreme Court has termed 'billing judgment.' …. That means they must exclude from their fee applications excessive, redundant, or otherwise unnecessary" hours. *Barnes*, 168 F.3d at 428 (internal quotes omitted). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them …." *Id*. These principles apply in FLSA cases. *E.g., Smith v. Werner Enterprises, Inc.*, 2015 WL 7185503 at *4 (S.D. Ala. 2015).

Counsel concede they have exercised no billing judgment at all but have instead dumped on the Court their unedited raw billings – all 77 pages of them. (Doc. 119-2; Doc. 119-4 at 11). It is unnecessary for the Court to identify particular objectionable entries, or even to employ the overall percentage reduction in hours that the Eleventh Circuit permits in lieu of such a laborious

exercise,[25] given that, applying the appropriate hourly rates as identified above to all the hours submitted, reasonable fees under the lodestar method fall below the $60,000 mark.[26]

In summary, an attorney's fee above $60,000 cannot be justified under the governing lodestar approach. Therefore, even were it legally possible for counsel to seek recovery from the plaintiffs of funds designated for their compensation, and even were it legally possible for counsel to seek additional fees after agreeing to accept $60,000 from the defendant, a fee award exceeding $60,000 would be unreasonable.[27] Pursuant to the settlement agreement, the additional $20,000 counsel seeks "will revert to the Settlement Fund for the benefit of the Plaintiffs." (Doc. 119-3 at 1).

### B. Plaintiffs' Recovery.

The amended complaint alleges that the defendants failed to pay hourly employees an overtime rate for hours over forty worked in a given workweek and failed to pay a subset of hourly employees, *i.e.,* drivers, at all for certain hours worked. (Doc. 37 at 6-8). The Court conditionally certified a collective action with two collectives: one of all hourly employees and another of driver employees (all of whom are hourly employees), with an employment period of January 2019 to January 2022. (Doc. 56 at 10-11).

---

[25] "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350. The Eleventh Circuit recently has made an across-the-board cut of 60% pursuant to this approach. *Zediker v. OrthoGeorgia*, 857 Fed. Appx. 600, 613 (11th Cir. 2021). Counsel themselves float the possibility of a 25% cut in their billed hours to account for their admitted failure to exercise billing judgment. (Doc. 120 at 10 n.1).

[26] With claimed expenses of $1,237.12, the total figure of fees and expenses is $60,749.62. There is plainly much more than $749.62 worth of fluff in counsel's claimed 422.3 hours.

[27] Because the agreement on fees was reached only after the parties reached agreement on the $125,000 recovery for the plaintiffs, the Court need not assess the reasonableness of the $60,000 figure. *E.g., Autrey*, 2021 WL 6335337 at *3 ("This Court has indicated that judicial review of a fee award is unnecessary when … the question of attorney's fees is addressed, and the amount negotiated, only after the parties have reached agreement on class recovery.").

The defendants raised a credible argument that all plaintiffs were subject to the Motor Carrier Act ("MCA") exemption, 29 U.S.C. § 213(b)(1), which would eliminate all recovery of overtime. Those members of the Hourly collective that were not drivers had arguments that they fell within the "small vehicle" exception to the MCA, but they faced problems with proving the weight of the vehicles with which they worked, especially on a weekly basis. The Driver collective faced additional proof problems with their minimum wage claim, given that their claim required them to show they worked off the clock in the face of records indicating they did not do so. (Doc. 124 at 6-10).

The solution worked out by the parties was to provide no recovery of minimum wages for the Driver collective but to provide a substantial recovery of overtime for the Hourly collective, which includes all plaintiffs. The settlement provides that the 47 named and opt-in plaintiffs will split $91,775,[28] which is equivalent to approximately 89.5% of the plaintiffs' total unpaid overtime over the relevant three-year period[29] and thus almost 45% of total potential recovery (overtime plus liquidated damages). Now that the disputed $20,000 will be added to the compensation fund, those percentages will rise to approximately 109% and almost 55%, respectively. Given the plaintiffs' difficulties, especially concerning the MCA exemption, and after considering the additional information the parties have provided in their supplemental brief, the Court finds this to be a fair and reasonable approach and result.[30]

The Court asked the parties to confirm that each plaintiff is to receive the same percentage of his or her unpaid overtime. (121 at 3). The parties instead confirmed that the named plaintiffs are being treated preferentially in that, using the $91,775 figure, these eight plaintiffs would receive 100% of their claimed overtime, while the opt-in plaintiffs would receive only 85% of their claimed overtime. (Doc. 124 at 10-11). Each of the named plaintiffs will receive a service award, and the parties make no effort to justify why the named plaintiffs

---

[28] This is the remainder after subtracting $13,225 in service awards from the $105,000 counsel concede is for the benefit of the plaintiffs. (Doc. 119-1 at 11).

[29] Total unpaid overtime is $102,523.23. (Doc. 124-1 at 1).

[30] Although the members of the Driver collective will receive no minimum wage recovery, that claim was very problematic, and each of these plaintiffs will receive the substantial overtime recovery described in text.

should be further favored by receiving a disproportionate share of overtime compensation. The Court therefore requires that each named plaintiff and opt-in plaintiff receive the same percentage of his or her overtime compensation/liquidated damages.

### C. Service Awards.

Lead plaintiff Michael Troxel is to receive a "service award" of $6,300. The other seven named plaintiffs are to receive service awards ranging from $225 to $2,500. (Doc. 119-1 at 11). The Court required the parties to furnish support for Troxel's seemingly lavish award. (Doc. 124 at 3-4). The parties respond that what they term a service award includes a compromise of Troxel's claim, (Doc. 37 at 8), that the defendants improperly failed to pay him for his final two weeks of work. (Doc. 124 at 11-14). Because, and only because, Troxel's "service award" includes this aspect, the Court approves the award. The remaining service awards are approved as consistent with the named plaintiffs' services, the breadth of their releases, and precedent.

### D. Releases.

The named plaintiffs are releasing the defendants with respect to all claims in any way connected with their employment. (Doc. 119-1 at 4). The opt-in plaintiffs are releasing the defendants with respect to all wage and compensation claims relating to their employment. (*Id*.). The Court, following its long practice and with citation to authority, requested confirmation that the plaintiffs and opt-in plaintiffs have made an informed decision assisted by advice of counsel. (Doc. 121 at 4). Counsel confirm that the named plaintiffs have done so. (Doc. 124 at 17). Counsel also confirm that the opt-in plaintiffs have been advised of the scope of the release and have been invited to contact counsel with questions. (*Id*.). The Court construes counsel's silence as to whether any opt-in plaintiff has contacted them and as to whether any questions have been resolved to the client's satisfaction as a representation to the Court, subject to Rule 11, that all questions have been so resolved. With that understanding, the release provisions are approved.

## CONCLUSION

"There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees": under the supervision of the Secretary of Labor or by "the district court … enter[ing] a stipulated judgment after scrutinizing the settlement for

-12-

fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *accord Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307-08 (11th Cir. 2013) (under *Lynn's*, which "applies to settlements between former employees and employers" as well as current employees, an FLSA settlement not made under the supervision of the Secretary of Labor "is valid only if the district court entered a 'stipulated judgment' approving it"). For the reasons set forth above and in the Court's previous order, (Doc. 121), and with the changes to the settlement agreement required by that order and this one, the Court finds the parties' settlement to be fair and reasonable, and the joint motion for approval of collective action settlement is **granted**. The parties are **ordered** to file a proposed stipulated judgment on or before **January 10, 2023**.

DONE and ORDERED this 5th day of December, 2022.

                                                      s/WILLIAM H. STEELE
                                                      UNITED STATES DISTRICT JUDGE